UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GERARD PISCOPO,<br><br>Plaintiff,<br><br>v.<br><br>PUBLIC SERVICE ELECTRIC AND GAS COMPANY ("PSE&G") and BETH J. ACQUAIRE, Individually,<br><br>Defendants. | Civil Action No. 13-552 (ES)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

This matter comes before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (D.E. No. 4). Defendants are Public Service Electric and Gas Company ("PSE&G") and Beth J. Acquaire ("Acquaire") (collectively "Defendants").[1] The Court has considered the parties' submissions in support of and in opposition to the instant motion, and decides the matter without oral argument pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendants' motion to dismiss is granted.

**I.     Factual Background and Procedural History**

Gerard Piscopo ("Plaintiff") is currently an employee at PSE&G working as a Service Specialist and has been an employee with the company since 1986. (D.E. No. 1, Notice of Removal, Ex. A ("Compl.") ¶¶ 1, 3). After conducting an investigation in response to a customer complaint in Fall 2008, PSE&G discharged Plaintiff on June 16, 2009 for:

---

[1] Defendant PSE&G filed the instant motion, but Defendant Acquaire joins in PSE&G's motion. (*See* D.E. No. 8, Notice of Joinder and Consent to Removal by Defendant Beth J. Acquaire, at 2).

1

    a. Acceptance of cash from the customer and for work that is normally performed by the Company without charge;
    b. Unacceptable conduct exhibited towards occupants of the residence;
    c. Misuse of Company assets; and
    d. Falsification of Company time records.

(*Id.* ¶¶ 6-7).

  Plaintiff's bargaining unit representative, the International Brotherhood of Electrical Workers, Local Union 94 ("Local 94") appealed this discharge on behalf of Plaintiff. (*Id.* ¶ 8); (D.E. No. 4, Brief in Support of Defendant PSE&G's Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim Upon Which Relief Can Be Granted ("Def. Br."), Ex. C ("Arb. Op.") 1). PSE&G and Local 94 appeared for arbitration hearings in May and June 2010. (Compl. ¶ 8). The issue before the arbitrator was to determine if PSE&G had "proper cause to terminate [Plaintiff]" and to determine any remedy that should result if the arbitrator found PSE&G had improper cause to terminate. (Arb Op. 1).

  On July 15, 2010, the arbitrator rendered his decision in favor of Plaintiff, finding that PSE&G "did not have proper cause to terminate [Plaintiff]." (Compl. ¶ 10) (emphasis omitted); (Arb. Op. 14). The arbitrator ordered PSE&G to reinstate Plaintiff to his immediate position and give Plaintiff "back pay from the date of the discharge to the date of the reinstatement less any outside earnings and unemployment benefits." (Compl. ¶ 11); (Arb. Op. 14). The Arbitration Opinion stated that "[b]oth parties were afforded full opportunity to present all the necessary proofs and evidence" and that "[a]ll witnesses were sequestered, sworn and subjected to direct and cross-examination and the parties closed orally at the hearing." (Arb. Op. 1).

  Plaintiff alleges that Acquaire conducted PSE&G's investigation and made "false assumptions not based in fact" throughout the investigation. (Compl. ¶ 12). Plaintiff also alleges that during the year Plaintiff was unemployed, Plaintiff was forced to cash into his 401K

plan "in order to provide for basic life necessities," incurring "substantial fees" as a result. (*Id.* ¶ 13). During Plaintiff's discharge, PSE&G denied Plaintiff unemployment benefits, which Plaintiff also allegedly challenged. (*Id.* ¶ 9). Plaintiff filed the instant action in the Superior Court of New Jersey, Law Division, Hudson County on December 31, 2012. (*See* D.E. No. 1). Defendants filed a Notice of Removal on January 29, 2013 and the case was removed to this Court. (*Id.*).

## II.     Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth "a short and plain statement of the claim showing that a pleader is entitled to relief." The pleading standard announced by Rule 8 does not require detailed factual allegations; however, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). In addition, the plaintiff's short and plain statement of the claim must "give the defendants fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citation omitted).

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Furthermore, a district court deciding a motion to dismiss generally does not consider materials beyond the pleadings. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). "[When] deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached [thereto], matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2011). "[A]n exception to the general rule is that a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (emphasis in original) (citation omitted & internal quotation marks omitted). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citation omitted).

**III. Analysis**[2]

    **A. Count One: Breach of Contract**[3]

Plaintiff alleges that the employment agreement between PSE&G and Plaintiff "led Plaintiff to reasonably believe that the company's policies regarding . . . job security would be honored." (Compl. ¶ 15). Plaintiff alleges further that PSE&G breached their contractual duties by (1) failing to fully inform Plaintiff of the allegations against him, (2) firing Plaintiff without just cause, and (3) failing to make a good faith effort to investigate the allegations of misconduct. (*Id.* ¶ 16). PSE&G argues that the Arbitration Opinion collaterally estops this breach-of-contract claim. (Def. Br. 6-11).

Collateral estoppel, otherwise known as issue preclusion, "prevents relitigation of a particular fact or legal issue that was litigated in an earlier action." *Seborowski v. Pittsburgh Press Co.*, 188 F.3d 163, 169 (3d Cir. 1999). Collateral estoppel may be raised in a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *M&M Stone Co. v. Pennsylvania*, 388 F. App'x 156, 162 (3d Cir. 2010) (citation omitted).

The Third Circuit has identified four standard requirements for the application of collateral estoppel: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Jean Alexander*

---

[2] In analyzing Plaintiff's Complaint, the Court can rely on exhibits attached to Plaintiff's Complaint. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2011). The Court notes that Plaintiff's Complaint refers to his Collective Bargaining Agreement and the Arbitration Opinion, but does not attach these documents to the Complaint. The Court properly considers the Defendants' exhibits attaching the Collective Bargaining Agreement and the Arbitration Opinion because these documents are "integral" to Plaintiff's allegations and "undisputedly authentic." *See Stallings ex rel. Estate of Stallings v. IBM Corp.*, No. 08-3121, 2009 WL 2905471, at *4 (D.N.J. Sept. 9, 2009); *Pension Benefit Guar. Corp.*, 998 F.2d at 1196 (holding that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on that document").

[3] Plaintiff alleges Count One as to PSE&G only.

*Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (citing *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 209 (3d Cir. 2001)) (citation and internal quotations omitted). The Third Circuit also considered "whether the party being precluded had a full and fair opportunity to litigate the issue in question in the prior action" and "whether the issue was determined by a final and valid judgment." *Jean Alexander Cosmetics, Inc.*, 458 F.3d at 249 (internal quotations and citations omitted).

### 1. An Unconfirmed Arbitration Award May Carry Issue Preclusive Effect

At issue is an arbitration award unconfirmed by any court. This Court has warned that "[b]ecause arbitrations are not conducted in courts of law and arbitrators are not bound by the same rules of evidence and procedure that judges are, courts must be cautious of procedural variances between arbitral proceedings and judicial proceedings when deciding whether to give preclusive effect to the former." *Shtab v. Greate Bay Hotel and Casino, Inc.*, 173 F. Supp. 2d 255, 261 (D.N.J. 2001) (citations and internal quotations omitted). Therefore, "issue preclusion based on a prior arbitration is permissible but not mandatory." *Id.* (citations and internal quotations omitted). Unconfirmed arbitration awards, such as the one at issue, have been denied preclusive effect because absent court review, some courts have not considered an arbitration award a final judgment. *See Gruntal & Co., Inc. v. Steinberg*, 854 F. Supp. 324, 337-38 (D.N.J. 1994). Nevertheless, this Court has given estoppel effect to issues actually determined in arbitration, as long as the "essential elements of adjudication" outlined in the Restatement (Second) of Judgments were satisfied. *See Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 673 F. Supp. 2d 313, 320; *see also Torre v. Falcon Jet Corp.*, 717 F. Supp. 1063, 1066 (D.N.J. 1989) (finding that an unconfirmed arbitration award accords

preclusive affect, "so long as the arbitration process was fair, the decision was reliable and no exception was provided."). These essential elements of adjudication include:

> (a) Adequate notice to persons who are bound by the adjudication;
> (b) The right on behalf of a party to present evidence and legal argument in support of the party's contentions and fair opportunity to rebut evidence and argument by opposing parties;
> (c) A formulation of issues of law and fact in terms of the application of rules with respect to specified parties concerning a specific transaction, situation, or status, or a specific series thereof;
> (d) A rule of finality, specifying a point in the proceeding when presentations are terminated and a final decision is rendered; and
> (e) Such other procedural elements as may be necessary to constitute the proceeding a sufficient means of conclusively determining the matter in question, having regard for the magnitude and complexity of the matter in question, the urgency with which the matter must be resolved, and the opportunity of the parties to obtain evidence and formulate legal contentions.

*Sheet Metal Workers*, 673 F. Supp. 2d at 320-321 (citing Restatement (Second) of Judgments §§ 83, 84 (1982)).[4]

Having reviewed Plaintiff's Complaint, the Court finds that the Arbitration warrants issue preclusive effect. Plaintiff fails to allege that the Arbitration was unfair or that the Arbitration did not produce a final award. *See Sheet Metal Workers*, 673 F. Supp. 2d at 321 (holding that an unconfirmed arbitration award can be given preclusive effect when there is no genuine dispute that that arbitration process was fair and produced a final award.); *cf. In re Purington*, 2012 WL 1945510, at *6 (Bankr. D.N.J. 2012) (refusing to give preclusive effect to an arbitration award in a motion to dismiss when "both parties described their arbitration experience as very brief, with little if any opportunity to present evidence, cross examine witnesses, make legal arguments, or

---

[4] As *Sheet Metal Workers* notes, the Restatement (Second) of Judgments § 84 has been cited approvingly by the Third Circuit in *Witkowski v. Welch*, 173 F.3d 192, 199-200 (3d Cir. 1999).

offer rebuttal"). Following two hearing days, the Arbitrator rendered his decision in favor of the Plaintiff. (Def. Br. 1).

In its decision, the Arbitrator noted that "[b]oth parties were afforded full opportunity to present all the necessary proofs and evidence" and that "[a]ll witnesses were sequestered, sworn and subjected to direct and cross-examination and the parties closed orally at the hearing." (Arb. Op. 1). Further, the Arbitration Opinion notes that the arbitrator's decision would be "final and binding." (Arb. Op. 2). The Collective Bargaining Agreement between PSE&G and Local 94 also states that an arbitration opinion and award "shall be final and binding upon both parties." (Def. Br., Ex. B ("Collective Bargaining Agreement") 46). As such, the Court finds that the Arbitration should have issue preclusive effect and thus bar the present action.

2. **The Arbitration Opinion Addressed Whether PSE&G Breached the Collective Bargaining Agreement**

Plaintiff argues that the Arbitration Opinion did not conduct a breach of contract analysis and Plaintiff's breach of contract claim is not collaterally estopped. (D.E. No. 6, Plaintiff Gerard Piscopo's Brief in Opposition to Defendant PSE&G's Motion to Dismiss Pursuant to FRCP 12(b)(6) ("Pl. Opp. Br.") 5-6). PSE&G argues that the issue of whether PSE&G had proper cause to discharge Plaintiff is the same underlying issue in Plaintiff's breach of contract claim. (D.E. No. 7, Reply Brief in Support of Defendant Public Service Electric and Gas Company's Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim upon which Relief can be Granted ("Def. Reply Br.") 1-2).

The Arbitrator decided whether PSE&G had proper cause to terminate Plaintiff and, if not, what remedies were appropriate for Plaintiff. (Arb. Op. 1). The only agreement that Plaintiff references in the Complaint that would create a contract in this breach of contract claim is the Collective Bargaining Agreement. (Compl. ¶ 26). Arbitrations, like the one at issue,

8

resolve "dispute[s] or difference[s] . . . as to the interpretation, application, or operation of any provision of this [Collective Bargaining] Agreement." (Collective Bargaining Agreement 44).

The Arbitrator's decision as to whether PSE&G had proper cause to terminate Plaintiff pursuant to the Collective Bargaining Agreement is the same underlying issue in this breach of contract claim. Plaintiff alleges in his Complaint that PSE&G breached its contract because PSE&G "fail[ed] to fully inform Plaintiff of the allegations against him" and "ultimately fir[ed] Plaintiff without just cause." (Compl. ¶ 16). Plaintiff further alleges that PSE&G breached this contract by "fail[ing] to make a good faith effort to investigate the allegations of misconduct." (*Id.*). Plaintiff's allegations concerning Plaintiff's firing "without just cause" and failing to investigate the allegations in good faith, however, all stem from the same issue addressed in the Arbitration Opinion: whether PSE&G had "proper cause" to terminate Plaintiff. In determining the issue of proper cause, the Arbitrator also considered PSE&G's "obligation to give the full facts to the employee" during their investigation and Plaintiff's allegation that PSE&G "was not seeking the truth but was trying to build a case against [Plaintiff]." (Arb. Op. 4).

Additionally, Plaintiff argues that Count One is based on an "Employee Handbook" and "internal policies," not just the Collective Bargaining Agreement. Therefore, Plaintiff contends, the instant claim deals with a broader issue than what was considered in the Arbitration. (Pl. Opp. Br. 7). In the Complaint, however, Plaintiff does not mention any employee handbook and does not provide any allegation as to how any internal policies were purportedly violated. The Third Circuit has ruled it is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Penn. ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted).

9

Plaintiff also argues that he is exempt from issue preclusion because he is seeking liquidated, emotional, and punitive damages regarding his breach of contract claim. (Pl. Opp. Br. 6). The Arbitrator, however, dealt with the issue of appropriate damages for the Plaintiff. (Arb. Op. 1, 14). New Jersey caselaw, both state and federal, mandates that additional damages do not prevent the application of collateral estoppel if said damages arise out of the same issue that was previously adjudicated. *See Habick v. Liberty Mutual Ins. Co.*, 320 N.J. Super. 244, 257 (App. Div. 1999) (precluding issues from being relitigated in a second arbitration despite the fact that the plaintiff was seeking "different remedies" in the second arbitration); *Torre v. Falcon Jet Corp.*, 717 F. Supp. 1063, 1064-66 (D.N.J. 1989) (granting summary judgment on claim requesting additional damages regarding the same issue decided in a previous unconfirmed arbitration award).[5]

Thus, because Count One concerns the same issue previously decided in the Arbitration, Plaintiff is collaterally estopped from brining it before this Court. Accordingly, Count One of Plaintiff's Complaint is dismissed with prejudice.

### B. Count Two: Breach of Implied Covenant of Good Faith and Fair Dealing[6]

In Count Two, Plaintiff alleges that PSE&G breached an implied covenant of good faith and fair dealing by "falsely investigating and firing the Plaintiff notwithstanding its knowledge that good cause for discharge did not exist, [by] failing to properly or adequately inform the Plaintiff of the allegations against him, and [by] neglecting to make a bona fide attempt to investigate the allegations of misconduct against the Plaintiff." (Compl. ¶ 21). PSE&G again argues that the Arbitration collaterally estops Plaintiff from bringing this claim. (Def. Br. 14).

---

[5] PSE&G alternatively argues that § 301 of the LMRA preempts Plaintiff's breach of contract claim and that pursuant to the LMRA, Plaintiff does not allege Local 94 breached its duty of fair representation. (Def. Br. 11-13). Because the Court finds that Plaintiff is collaterally estopped from bringing Count One, the Court need not address these alternative arguments.

[6] Plaintiff alleges Count Two as to PSE&G only.

Plaintiff's factual allegations regarding the breach of implied covenant of good faith and fair dealing are the same factual allegations plead in Count One. (Compl. ¶¶ 16, 21). Therefore, for the same reasons outlined above in Section III(A)(1) & (2), the Arbitration collaterally estops Plaintiff's claim for breach of the implied covenant of good faith and fair dealing. Thus, Count Two of Plaintiff's Complaint is dismissed with prejudice.[7]

### C. Count Four: Violation of the FLSA[8]

Plaintiff alleges that PSE&G intentionally violated the FLSA "by withholding pay and benefits accrued and earned by Plaintiff during his employment." (Compl. ¶ 33). Plaintiff further alleges that Defendant Acquaire intentionally violated the FLSA because she "was responsible in whole or in part for the Plaintiff's damages resulting under FLSA violations." (*Id.* ¶ 34). Defendants argue that the Complaint does not contain any factual allegation to support the FLSA claim. (Def. Br. 17). Defendants further argue that any attempt by Plaintiff to recover overtime pay, in addition to the back pay awarded to Plaintiff by the Arbitrator, is not recoverable under the FLSA. (Def. Reply Br. 9-10). Specifically, Defendant contends that because Plaintiff did not "work" any overtime between his discharge and reinstatement, and was not a PSE&G "employee" during said period, he is not entitled to any FLSA relief. (*Id.*).

Plaintiff does not allege in his Complaint any factual allegations that Defendants withheld any pay or benefits earned by Plaintiff "during [Plaintiff's] employment." (Compl. ¶ 33). Any factual allegation regarding lack of pay was regarding the time period when Plaintiff was discharged from PSE&G. (Compl. ¶¶ 11, 13). Regarding any lost wages during this period, the Arbitrator granted Plaintiff "back pay from the date of discharge to the date of reinstatement less

---

[7] PSE&G alternatively argues that § 301 preempts Plaintiff's breach of the implied covenant of good faith and fair dealing claim. Because the Court finds that Plaintiff is collaterally estopped from bringing Count Two, the Court need not address this alternative argument.

[8] Plaintiff voluntarily dismisses Count Three of his Complaint. (Pl. Opp. Br. 11).

11

any outside earnings and unemployment benefits." (Arb. Op. 14; Compl. ¶ 11). Because of the lack of factual allegations regarding any Defendants' failure to convey pay or benefits earned by Plaintiff during his employment, Count Four is too conclusory to survive a motion to dismiss. *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

Plaintiff attempts to clarify his position in his opposition brief by stating that his back pay awarded by the Arbitrator "did not include pay for overtime, which Plaintiff regularly worked and which made up a significant portion of Plaintiff's annual income." (Pl. Opp. Br. 11). However, as stated earlier, "the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Pennsylvania ex rel. Zimmerman*, 836 F.2d at 181 (citation omitted).

Thus, Plaintiff's threadbare FLSA allegations contained in the Complaint cannot be accepted at this time. Accordingly, Count Four of Plaintiff's Complaint is dismissed.

### D. Count Five: Violations of the New Jersey Wage Payment Law ("NJWPL"), Older Workers Benefit Protection Act ("OWBPA"), and Employee Retirement Income Security Act ("ERISA")[9]

Plaintiff alleges in Count Five that PSE&G violated the NJWPL, the OWBPA, and ERISA "for failing to remit the required pay, overtime, pension contributions, accurate record keeping, retirement contributions, and monetary benefits." (Compl. ¶ 37).

#### 1. NJWPL

The NJWPL "regulates the manner, mode, and time of payment; the conditions for withholding wages; and permissible deductions from employees' wages." 2-16 Maureen S. Binetti & Stephanie D. Gironda, Employment Litigation in New Jersey § 16.07 (2012). For the purposes of NJWPL, wages are defined as "direct monetary compensation for [] services

---
[9] Plaintiff alleges Count Five as to PSE&G only.

rendered by an employee, where the amount is determined on a time, task, piece, or commission basis excluding any form of supplementary incentives and bonuses which are calculated independently of regular wages and paid in addition thereto." N.J. Stat. Ann. § 34:11-4.1 (West 2012).

Plaintiff's allegations regarding any alleged NJWPL violations are conclusory. Plaintiff does not allege any facts in the Complaint that PSE&G failed to give Plaintiff any required pay, overtime, and pension and retirement contributions.[10] While Plaintiff was not paid during his period of discharge, the Arbitrator stated that Plaintiff "shall receive back pay from the date of discharge to the date of reinstatement less any outside earnings and unemployment benefits." (Arb. Op. 14). Plaintiff does not allege in his Complaint that PSE&G did not comply with the demands of the Arbitrator. Plaintiff does allege that he challenged PSE&G's denial of his receipt of unemployment benefits during the year Plaintiff was discharged. (Compl. ¶ 9). The NJWPL does not, however, govern unemployment compensation. *See* N.J. Stat. Ann. § 34:11-4.1 *et seq.* Therefore, the NJWPL claim is dismissed without prejudice.

### 2. OWBPA

The Age Discrimination in Employment Act ("ADEA") prohibits an employer from discrimination against an individual regarding employment because of the individual's age. *See* 29 U.S.C. § 623 (2012). The OWBPA amended the ADEA and "imposes specific requirements for releases covering ADEA claims." *Oubre v. Entergy Operations*, 522 U.S. 422, 424 (1998). The OWBPA states that "[a]n individual may not waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary." *Oubre*, 522 U.S. at 426 (quoting 29 U.S.C. §

---

[10] Plaintiff does allege that during this discharge period, "Plaintiff was forced to cash in his 401K plan in order to provide for basic life necessities" and "incurred substantial fees as a result." (Compl. ¶ 13). This allegation, however, does not allege that PSE&G failed to give Plaintiff any pay, overtime, and pension and retirement contributions when they were required to do so.

13

626(f)(1) (2012)). The Complaint, however, provides no facts that indicate age is relevant to the instant case. Plaintiff does not assert a claim for age discrimination in the Complaint nor does Plaintiff address a release or waiver of an ADEA claim in the Complaint. As such, Plaintiff's OWBPA claim is dismissed without prejudice.

### 3. ERISA

ERISA covers employee pension benefit plans. *See* 29 U.S.C. § 1321(a) (2012). Unless a plaintiff seeks to assert a substantive right established by the ERISA statute, the plaintiff must first exhaust his administrative remedies under the terms of the benefit plan. *Lees v. Munich Reinsurance America, Inc.*, No. 11-3764, 2012 WL 1183694, at *3 (D.N.J. Apr. 9, 2012) (citations omitted). Thus, a "federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan." *Weldon v. Kraft*, 896 F.2d 793, 800 (3d Cir. 1990) (citation omitted). To survive a motion to dismiss, a plaintiff "must have exhausted administrative remedies or must establish that exhaustion would be futile." *Lees*, 2012 WL 1183694, at *3.

Plaintiff does not allege that he is asserting a substantive right established by the ERISA statute. In fact, Plaintiff does not allege which section within ERISA he is bringing forth this claim. [11] Plaintiff does not even allege any facts regarding the details of his pension benefit plan. [12] Nor does Plaintiff allege that he exhausted administrative remedies or establish that

---

[11] It appears that Plaintiff is seeking specific benefits under his benefit plan because he alleges that PSE&G failed "to remit . . . pension contributions . . . and monetary benefits." (Compl. ¶ 37). Seeking "specific benefits [under the benefit plan] rather than an interpretation of ERISA itself" requires exhaustion of administrative remedies. *Lees*, 2012 WL 1183694, at *3; *Zipf v. Am. Tel. Co.*, 799 F.2d 889, 892 (3d Cir. 1986) ("When a plan participant claims that he or she has unjustly been denied benefits, it is appropriate to require participants first to address their complaints to the fiduciaries to whom Congress . . . assigned the primary responsibility for evaluating claims for benefits").

[12] The Collective Bargaining Agreement does note that the "Pension Plan of [PSE&G] . . . shall continue for the duration of this Agreement." (Collective Bargaining Agreement 44). Plaintiff,

exhaustion of administrative remedies would be futile. In his opposition brief, Plaintiff argues that PSE&G "has failed to offer proof of the existence of any applicable administrative remedies under [PSE&G's] benefit plan." (Pl. Opp. Br. 13). Yet, it is Plaintiff who must allege exhaustion of administrative remedies. *See Lees*, 2012 WL 1183694, at *4 (dismissing an ERISA claim because "as far as this Court has been informed, the claims in this case [regarding exhaustion of administrative remedies] have not been submitted to the plan fiduciaries by Plaintiff"); *Cornejo v. Horizon Blue Cross/Blue Shield of N.J.*, No. 11-7018, 2012 WL 715553, at *3 (D.N.J. Mar. 5, 2012) (dismissing an ERISA claim because "the Complaint does not plead that Plaintiff utilized the required appeals process set forth in the Plan").

Plaintiff also argues that PSE&G did not notify Plaintiff of "the available options or procedures for handling his accounts post-termination" and that PSE&G "has not offered any proof that the Plaintiff was otherwise aware of the proper administrative remedies or procedures to follow." (Pl. Opp. Br. 13). Again, Plaintiff does not allege any facts regarding PSE&G's lack of notice of any exhaustion requirements in his Complaint. Plaintiff cannot amend his pleadings with factual allegations made in his opposition to a motion to dismiss. *See Pennsylvania ex rel. Zimmerman*, 836 F.3d at 181.

Nevertheless, even if this Court were to accept Plaintiff's facts postulated in his opposition brief, Plaintiff fails to meet any of the exceptions to the exhaustion requirement: (1) if the plaintiff is threatened with irreparable harm; (2) if exhaustion of administrative remedies would be futile; and (3) if the claimant has been denied meaningful access to administrative procedures. *Majka v. Prudential Ins. Co. of Am.*, 171 F. Supp. 2d 410, 414 (D.N.J. 2001)

---

however, does not mention any detail regarding this plan in his Complaint and does not attach a copy of this plan to any document submitted to the Court.

(internal citation omitted). Ignorance of exhaustion requirements is not among the exceptions available to Plaintiff. Thus, Plaintiff's ERISA claim is dismissed without prejudice.

### E. Count Six: Unreasonable Intrusion upon Seclusion

Plaintiff argues that Defendants "conduct[ed] surveillance on Plaintiff without consent or knowledge." (Compl. ¶ 39). Plaintiff further alleges that this surveillance was "an invasion of his privacy and expectation of seclusion." (*Id.* ¶ 39.) Defendant argues that Plaintiff has not alleged sufficient facts for this claim to survive a motion to dismiss. (Def. Br. 21-22; Def. Reply Br. 15).

New Jersey has adopted the Restatement's definition for an intrusion upon seclusion tort:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person.

*Tamayo v. Am. Coradious Int'l, L.L.C.*, No. 11-6549, 2011 WL 6887869, at *4 (D.N.J. Dec. 28, 2011) (quoting Restatement (Second) of Torts § 652B (1977)).

The comments to § 652B elaborate on actions that are and are not intrusions upon seclusion. Comment (b) notes that "the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs windows with binoculars or tapping his telephone wires" may be a form of intrusion upon seclusion. Restatement (Second) of Torts § 652B, cmt. (b). Comment (b) further notes that "some other form of investigation or examination into [a plaintiff's] private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private back account, or compelling him by a forged court order to permit an inspection of his personal documents" may also be a form of intrusion upon seclusion. *Id.* Comment (c) qualifies actions that are not liable under the tort of intrusion upon seclusion, specifically that there is no liability

16

"for observing [a plaintiff] or even taking [a plaintiff's] photograph while [the plaintiff] is walking on the public highway, since he is not then in seclusion, and his appearance is public and open to the public eye." *Id.*, cmt. (c).

Here, Plaintiff does not plead factual allegations sufficient to show liable conduct in the Complaint. Plaintiff merely states that Plaintiff "conduct[ed] surveillance on Plaintiff without consent or knowledge" which was "an invasion of his privacy and expectation of seclusion." (Compl. ¶ 39). As evidenced by the above comments to § 652B, the type of surveillance is critical in determining the validity of an intrusion upon seclusion claim. *See Boring v. Google, Inc.*, 362 F. App'x 273, 278-79 (3d Cir. 2010) (holding that photography of the external view of Plaintiff's house is not surveillance highly sensitive enough to warrant the tort and upholding a motion to dismiss the tort claim).

Thus, Plaintiff's conclusory statement of surveillance is nothing more than a formulaic recitation of the elements of this tort. *See Phillips*, 515 F.3d at 231 ("[A] plaintiff's [Rule] 8 obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). In Plaintiff's opposition brief, he attempts to supplement the Complaint with additional factual allegations; including allegations that Defendants surveyed Plaintiff while performing his duties at work, that Defendants followed Plaintiff "to determine where he went after his work shift ended, including following [] Plaintiff to his home," and that Defendants publicly made false allegations concerning Plaintiff's sexual conduct. (Pl. Opp. Br. 14-15). However, as previously stated, Plaintiff cannot amend his pleadings with factual allegations made in opposition to a motion to dismiss. *See Pennsylvania ex rel. Zimmerman*, 836 F.3d at 181. Therefore, Plaintiff's tort claim of unreasonable intrusion upon seclusion is dismissed without prejudice.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss Counts One, Two, and Three are granted *with prejudice*. Defendants' motion to dismiss Counts Four, Five, and Six are granted *without prejudice*. Plaintiff shall have thirty days to file an amended complaint to cure the deficiencies noted above.

s/*Esther Salas*
**Esther Salas, U.S.D.J.**