<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GERARD PISCOPO,** | Civil Action No. 13-552 (ES) |
| **Plaintiff,** | OPINION |
| v. | |
| **PUBLIC SERVICE ELECTRIC AND GAS COMPANY ("PSE&G") and BETH ACQUAIRE, Individually** | |
| **Defendants.** | |

<u>SALAS, DISTRICT JUDGE</u>

This matter comes before the Court on Defendants' motion to dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (D.E. No. 16). Defendants are Public Service Electric and Gas Company ("PSE&G") and Beth Acquaire ("Acquaire") (collectively "Defendants"). The Court has considered the parties' submissions in support of and in opposition to the instant motion, and decides the matter without oral argument pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendants' motion to dismiss is granted.[1]

**I.   Factual Background and Procedural History**

Gerard Piscopo ("Plaintiff") is currently an employee at PSE&G working as a Service Specialist and has been an employee with the company since 1986. (D.E. No. 15, Amended Complaint, ("Am. Compl.") ¶¶ 1, 3). After conducting an investigation in response to a customer complaint in Fall 2008, PSE&G discharged Plaintiff on June 16, 2009 for:

> a.  Acceptance of cash from the customer and for work that is normally performed by the Company without charge;

---

[1] As outlined in this Court's previous Opinion, (D.E. No. 10), the Court has jurisdiction over the instant matter, and need not reassert its jurisdiction here.

1

    b. Unacceptable conduct exhibited towards occupants of the residence;
    c. Misuse of Company assets; and
    d. Falsification of Company time records.

(*Id.* ¶¶ 6-7).

  Plaintiff's bargaining unit representative, the International Brotherhood of Electrical Workers, Local Union 94 ("Local 94") appealed this discharge on behalf of Plaintiff. (*Id.* ¶ 8). PSE&G and Local 94 appeared for arbitration hearings (the "Arbitration"), in May and June 2010. (Am. Compl. ¶ 8). The issue before the arbitrator was to determine if PSE&G had "proper cause to terminate [Plaintiff]" and to determine any remedy that should result if the arbitrator found PSE&G had improper cause to terminate. (*Id.*).

  On July 15, 2010, the arbitrator rendered her decision in favor of Plaintiff, finding that PSE&G "did not have proper cause to terminate [Plaintiff]." (Am. Compl. ¶ 10) (emphasis omitted). The arbitrator ordered PSE&G to reinstate Plaintiff to his immediate position and give Plaintiff "back pay from the date of the discharge to the date of the reinstatement less any outside earnings and unemployment benefits." (Am. Compl. ¶ 11). The Arbitration stated that "[b]oth parties were afforded full opportunity to present all the necessary proofs and evidence" and that "[a]ll witnesses were sequestered, sworn and subjected to direct and cross-examination and the parties closed orally at the hearing." (D.E. No. 16, Brief in Support of Defendant PSE&G's Motion to Dismiss the Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim Upon Which Relief Can Be Granted ("Def. Br."), Ex. D ("Arb. Op."), at 1).

  Acquaire conducted PSE&G's investigation and made "false assumptions not based in fact" throughout the investigation. (Am. Compl. ¶ 15). Plaintiff alleges that during the year Plaintiff was unemployed, Plaintiff was forced to cash into his 401K plan "in order to provide for basic life necessities," incurring "substantial fees" as a result. (*Id.* ¶ 16). During Plaintiff's

2

discharge, PSE&G denied Plaintiff unemployment benefits, which Plaintiff also allegedly challenged. (*Id*. ¶ 9). Plaintiff further alleges that though he was awarded some back pay through the Arbitration, "the back pay did not include pay for overtime worked, which made up a significant portion of Plaintiff's income. (*Id*. ¶ 12). Plaintiff was "not awarded the pension and retirement contributions due to him," since PSE&G "failed to remit the required contributions to the fund for the benefit of the Plaintiff." (*Id*. ¶ 13). Plaintiff also alleges that Plaintiff attempted to access the pension plan's administrative procedures "on several occasions in late 2010 and subsequent years," but he was denied access and "was only told 'don't worry about it.'" (*Id*. ¶ 14).

Procedurally, Plaintiff filed the instant action in the Superior Court of New Jersey, Law Division, Hudson County on December 26, 2012. (*See* D.E. No. 1). It was removed to this Court on January 29, 2013. (*Id*.). Defendants moved to dismiss the pleadings pursuant to Fed. R. Civ. P. 12(b)(6) on February 2, 2013. (*See* D.E. No. 4). The Court granted Defendants' motion by Opinion and Order dated September 27, 2013. (*See* D.E. Nos. 10 & 11). The Court dismissed, *with prejudice*, Plaintiff's claims under Count One (Breach of Contract), Count Two ( Breach of Implied Covenant of Good Faith and Fair Dealing), and Count Three, (Wrongful Discharge). (*Id*.). The Court dismissed, without prejudice, the remaining three counts, which alleged violations of the FLSA, NJWPL, ERISA, and intrusion upon seclusion, for failure to plead facts sufficient to state a claim. (*Id*.).

## II.     Standard of Review

Fed. R. Civ. P. 8(a)(2) requires a complaint to set forth "a short and plain statement of the claim showing that a pleader is entitled to relief." The pleading standard announced by Rule 8 does not require detailed factual allegations; however, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). In addition, the plaintiff's short and plain statement of the claim must "give the defendants fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citation omitted).

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Furthermore, a district court deciding a motion to dismiss generally does not consider materials beyond the pleadings. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). "[When] deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached [thereto], matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2011). "[A]n exception to the general rule is that a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (emphasis in original) (citation omitted & internal quotation marks omitted). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citation omitted).

**III.   Analysis**[2]

    **A.   Count Two: Violation of the FLSA**[3]

In the Amended Complaint, Plaintiff alleges that PSE&G intentionally violated the FLSA "by withholding pay and benefits accrued and earned by Plaintiff during his employment." (Am. Compl. ¶ 28). Plaintiff further alleges that though the Arbitration awarded back pay, "the back pay did not include pay for overtime worked, which made up a significant portion of Plaintiff's income," (*Id.* ¶ 30), and therefore, Defendant "wrongfully withheld portions of Plaintiff's wages." (D.E. No. 18, Plaintiff Gerard Piscopo's Brief in Opposition to Defendant PSE&G's Motion to Dismiss Pursuant to FRCP 12(b)(6) ("Pl. Opp. Br.") at 7). Plaintiff also alleges that Acquaire intentionally violated the FLSA because she "was responsible in whole or in part for the Plaintiff's damages resulting under FLSA violations." (Am. Compl. ¶ 29).[4]

In response, Defendants argue that though the Plaintiff asserts that PSE&G withheld "pay and benefits accrued and earned by Plaintiff during his employment," Plaintiff is really attempting to recover overtime pay in addition to the back pay awarded to Plaintiff in the Arbitration, to which he is not entitled under the FLSA. (Def. Br. at 12-13). Additionally, Defendants argue that Plaintiff's Amended Complaint did not cure the lack of factual allegations regarding PSE&G's

---

[2] In analyzing Plaintiff's Amended Complaint, the Court can rely on exhibits attached to Plaintiff's Amended Complaint. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2011). The Court notes that Plaintiff's Amended Complaint refers to his Collective Bargaining Agreement and the Arbitration Opinion, but does not attach these documents to the Amended Complaint. The Court properly considers the Defendants' exhibits attaching the Collective Bargaining Agreement and the Arbitration Opinion because these documents are "integral" to Plaintiff's allegations and "undisputedly authentic." *See Stallings ex rel. Estate of Stallings v. IBM Corp.*, No. 08-3121, 2009 WL 2905471, at *4 (D.N.J. Sept. 9, 2009); *Pension Benefit Guar. Corp.*, 998 F.2d at 1196 (holding that "a court may consider an undisputedly authentic document that a defendants attach as an exhibit to a motion to dismiss if the plaintiff's claims are based on that document.").

[3] The Court dismissed, *with prejudice*, Plaintiff's Wrongful Discharge claim in its September 27, 2013 Opinion after Plaintiff voluntarily withdrew it. (D.E. No. 10, at 11 n.8). Plaintiff raised the claim again in the Amended Complaint, but omitted it in his opposition brief. Therefore, the Court need not address the claim.

[4] Plaintiff further alleges that Plaintiff was not "awarded the pension and retirement contributions due to him." (Am. Compl. ¶ 31). However, the FLSA does not govern pension and retirement contributions. *See* 29 U.S.C. 201.

6

"failure to convey pay or benefits earned by Plaintiff during his employment," for which the Court previously dismissed his initial complaint.  (*Id*. at 14).

The Court made clear to Plaintiff in its September 27, 2013 Opinion that, "[b]ecause of the lack of factual allegations [in his initial complaint] regarding any Defendants' failure to convey pay or benefits earned by Plaintiff *during his employment*, [the FLSA claim] is too conclusory to survive a motion to dismiss.  (D.E. No. 10, at 12) (emphasis added).  Plaintiff did not cure this deficiency, and just as in his initial complaint, the Amended Complaint's only factual allegations concerning withheld pay and benefits refer to overtime pay when Plaintiff was temporarily discharged—not while employed by Defendants.

**1. Plaintiff was not an Employee Under the FLSA During the Period of Discharge.**

To state a claim for overtime pay pursuant to the FLSA, the Plaintiff must show that: 1) defendant was engaged in commerce as defined by statute; 2) plaintiff was an "employee" as defined by the statute; and 3) plaintiff "worked more than forty hours in a week, but was not paid overtime for hours worked in excess of forty hours."  *Michaelgreaves v. Gap, Inc.*, No. 11-6283, 2013 WL 257127, at *4 (D.N.J. Jan. 23, 2013).  Plaintiff cannot demonstrate that he was an "employee," nor that he worked more than forty hours in a week during the period between his discharge and reinstatement.

Moreover, the FLSA only applies to an "employee," who is defined as "any individual employed by an employer."  29 U.S.C.A. § 203(e)(1) (West 2014).  The act further defines "employ" as "to suffer or permit to work."  § 203(g).  As such, Plaintiff was not an employee during the period Defendants discharged him, as Defendants did not suffer or permit Plaintiff to work.

7

Notwithstanding such clear definitions of "employee," Plaintiff argues that for purposes of the FLSA, he was an employee during his discharge, stating that "BUT FOR Defendant PSE&G's unlawful termination of the Plaintiff he would have been entitled to the same rate of pay had he been allowed to work." (Pl. Opp. Br. at 7). Plaintiff then quotes 5 CFR 550.805(a)(1), which relates to the Back Pay Act, 5 U.S.C § 5596, stating that "when the appropriate authority corrects or directs the correction of an unwarranted or unjustified personnel action . . . the employee shall be deemed to have performed service during the period of the corrective action." (Pl. Opp. Br. at 7).

However, a close reading of the actual text of the regulation exposes Plaintiff's careful omission: "the employee shall be deemed to have performed service *for the agency* during the period of the corrective action." 5 CFR 550.805(a)(1) (emphasis added). The omission is critical, revealing that the Back Pay Act and the corresponding regulation apply only to federal government employees. *See* 5 U.S.C.A. § 5596(a)(1)-(7) (West 2014) (defining agency as "an Executive agency; the Administrative Office of the United States Courts, . . . the Library of Congress," among other federal government entities); 5 CFR 550.803 (defining employee as "an employee of an agency" or former agency employee making a back pay claim). As an employee of PSE&G, a public company, Plaintiff is not a federal agency employee, and therefore, neither the Back Pay Act, nor the related cited regulation, applies.

**2. Plaintiff did not Work More Than Forty Hours in a Workweek During the Period of Discharge.**

In the Amended Complaint, Plaintiff alleges that though the Arbitration awarded back pay, "the back pay did not include pay for overtime worked, which made up a significant portion of Plaintiff's income." (Am. Compl. ¶ 30). Plaintiff argues that Defendants provided the Plaintiff

8

his back pay "at his base salary and did not include pay for overtime," and therefore, Defendants "wrongfully withheld portions of Plaintiff's wages." (Pl. Opp. Br. at 7).

However, the FLSA only requires employers to pay overtime compensation to employees for hours *actually worked* in excess of forty hours per week. *See* 29 U.S.C.A. § 207(a)(1) (West 2014) ("No employer shall employ any of his employees who in any workweek is *engaged* in commerce or in the production of goods for commerce . . . for a workweek *for longer than forty hours* unless such employee receives compensation for his employment . . . at a rate not less than one and one-half times the regular rate at which he is employed) (emphasis added); *Aboud v. City of Wildwood*, No. 12-7195, 2013 WL 2156248, at *5 (D.N.J. May 17, 2013) ("If an employee works less than forty hours per week the overtime protections of the FLSA are inapplicable.").

Plaintiff did not "engage" in any work for Defendant during the period between his discharge and his reinstatement. Therefore, since Plaintiff did not work more than forty hours in a week during this period, "the overtime protections of the FLSA are inapplicable." *Id*. As such, the Court finds that Plaintiff has not stated a claim under the FLSA, and Count Two is accordingly dismissed *with prejudice*.

**B.     Count Three: Violation of the New Jersey Wage Payment Law ("NJWPL"), and ERISA[5]**

Plaintiff alleges in Count Three that PSE&G violated the NJWPL and ERISA "for failing to remit the required pay, overtime, pension contributions, accurate record keeping, retirement contributions, and monetary benefits." (Am. Compl. ¶ 35).

---

[5] Plaintiff alleges Count Three as to PSE&G only.

9

1. **NJWPL**

As with his FLSA claim, Plaintiff alleges that though the Arbitration awarded him back pay, it "did not include pay for overtime which made up a significant portion of Plaintiff's income." (Am. Compl. ¶ 36).[6] Plaintiff further alleges that he was "not awarded the pension and retirement contributions due to him." (*Id*. ¶ 37). PSE&G argues that Plaintiff's NJWPL claim fails for the same reasons the FLSA claim fails, as "plaintiff performed no work for PSE&G during the period in question." (Def. Br. at 15).

The NJWPL governs the manner, mode, and time of wage payment, as well as when an employer may withhold part of an employee's paycheck. *See* N.J. Stat. Ann. § 34:11-4.1 *et seq*. (West 2014). The NJWPL defines wages as "direct monetary compensation for labor or services rendered by an employee, where the amount is determined on a time, task, piece, or commission basis excluding any form of supplementary incentives and bonuses which are calculated independently of regular wages and paid in addition thereto." N.J. Stat. Ann. § 34:11-4.1. The NJWPL does not deal with pension and retirement contributions from an employer to an employee's retirement plan. Rather, NJWPL only states when an employer may lawfully withhold or divert a portion of an employee's wages, such as "for contributions authorized either in writing by employees, or under a collective bargaining agreement, to employee . . . pension, retirement, and profit sharing plans." N.J. Stat. Ann. § 34:11-4.4(b)(1).

---

[6] The Court does not address this part of Plaintiff's NJWPL claim. Plaintiff seems to be seeking overtime payment, which is not addressed by the NJWPL, N.J. Stat. Ann. § 34:11-4.1 (West 2014). The claim seems to fall under the New Jersey State Wage and Hour Law ("NJWHL"), N.J. Stat. Ann. § 34:11-56a1. However, even under the NJWHL, Plaintiff's claim for overtime pay fails, as he did not engage in any working time in excess of forty hours in a week during the period between his discharge and reinstatement. *See* N.J. Stat. Ann. § 34:11-56a4 ("Employer shall pay . . . [overtime pay] for each hour of *working time in excess of 40 hours in any week*.") (emphasis added); N.J.A.C. 12:56-6.1 ("[F]or each hour of working time *in excess of 40 hours* in any week . . . every employer shall pay [overtime pay] to each of his or her employees.") (emphasis added).

Plaintiff argues that "[PSE&G's wrongful termination of the Plaintiff, coupled with the wrongful denial of unemployment benefits, interfered with the terms and conditions of Plaintiff's pension and retirement benefit account." (Pl. Opp. Br. at 8). But the NJWPL does not govern these issues. *See* N.J. Stat. Ann. § 34:11-4.1 *et seq*. Therefore, Plaintiff has failed to plead sufficient facts to state a claim, and his NJWPL claim under Count 2 is dismissed *with prejudice*.[7]

### 2. ERISA

ERISA governs the rights and obligations of participants and beneficiaries of employee pension benefit plans. *See* 29 U.S.C.A. § 1321(a) (West 2014). It is well recognized that unless a plaintiff seeks to assert a substantive right established by the ERISA statute, the plaintiff must first exhaust his administrative remedies under the terms of the benefit plan. *Lees v. Munich Reinsurance America, Inc.*, No. 11-3764, 2012 WL 1183694, at *3 (D.N.J. Apr. 9, 2012) (citations omitted). Accordingly, "a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan." *Weldon v. Kraft*, 896 F.2d 793, 800 (3d Cir. 1990) (citation omitted). To survive a motion to dismiss, a plaintiff "must have exhausted administrative remedies or must establish that exhaustion would be futile." *Lees*, 2012 WL 1183694, at *3.

Plaintiff alleges that he "was not awarded the pension and retirement contributions due to him" as a result of the Arbitration. (Am. Compl. ¶¶ 13, 37). Plaintiff further alleges that PSE&G "failed to provide a full and fair review of the plan and otherwise failed to make disclosures" as required by Section 503 of ERISA. (*Id*. ¶ 38).[8] In response, PSE&G argues that "in essence,

---

[7] PSE&G argued that ERISA preempts Plaintiff's pension and retirement contributions claim under NJWPL. (Def. Br. at 15 n.6). Because the Court finds that the NJWPL does not govern Plaintiff's claim, the Court need not address this alternative argument.

[8] Plaintiff also alleges that "on other days, and including September 8, 2011, Plaintiff requested information on the plan," and that "section 502(c)(1)(B) of ERISA authorizes this Court to award a participant up to $110 per day for each that certain requested documents have not been delivered." (Am. Compl. ¶ 38). While Plaintiff is correct in his

11

Plaintiff seeks a judicial remedy for a breach of a collective bargaining agreement," which has a broad arbitration procedure. (Def. Br. at 17-18).[9] PSE&G further argues that Plaintiff again failed to allege sufficient facts to state a claim. (*Id*. at 19-20).

Plaintiff's claim is based under section 502(a)(1)(B) of ERISA, which allows a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C.A. § 1132(a)(1)(B). In essence, Plaintiff's allegations indicate that he seeks specific benefits for an alleged breach of the terms of his plan.

However, seeking "specific benefits [under the benefit plan] rather than an interpretation of ERISA itself" requires exhaustion of administrative remedies. *Lees*, 2012 WL 1183694, at *3; *Zipf v. Am. Tel. and Tel. Co.*, 799 F.2d 889, 892 (3d Cir. 1986) ("When a plan participant claims that he or she has unjustly been denied benefits, it is appropriate to require participants first to address their complaints to the fiduciaries to whom Congress . . . assigned the primary responsibility for evaluating claims for benefits."); *Majka v. Prudential Ins. Co. of Am.*, 171 F. Supp. 2d 410, 414 (D.N.J. 2001) ("[Section 503] has been universally interpreted as requiring an individual claiming improper denial of benefits first to exhaust the internal administrative procedures made available by the ERISA plan at issue before seeking judicial relief.").

---

reiteration of the law, Plaintiff does not allege anywhere that Defendant failed or refused to comply with the requests by not "mailing the material . . . within 30 days after such request." 29 U.S.C.A. § 1132(c)(1)(B).

[9] The Court, at this time, cannot address PSE&G's argument as it is unclear what the terms of the benefit plan are or which administrative procedures Plaintiff refers to in his Amended Complaint. *See infra* n.9 and accompanying text. The Collective Bargaining Agreement notes under Section B of Article VIII that the "Pension Plan of [PSE&G] . . . shall continue for the duration of this Agreement," but also states that "[d]isputes or differences arising between the Company and . . . [employees] as to the interpretation, application or operation of the provisions of this Section B of Article VIII . . . shall not be subject to arbitration" under the arbitration clause of the agreement. (Def's Br., Ex. C ("Collective Bargaining Agreement") at 44).

Here, Plaintiff does not allege that he exhausted any available administrative remedies. Plaintiff does allege that "on multiple occasions, [he] attempted to access the pension plan's administrative procedures and was denied meaningful access each and every time." (Am. Compl. ¶ 38). He alleges these attempts occurred in "late 2010 and subsequent years," and that he was "only told 'don't worry about it.'" (*Id*. ¶ 14). Courts have noted that exhaustion may be excused (1) if the plaintiff is threatened with irreparable harm, (2) if exhaustion of administrative remedies would be futile, and (3) if the claimant has been denied meaningful access to administrative procedures. *Majka*, 171 F. Supp. 2d at 414 (internal citation omitted).

Though Plaintiff's position is not entirely clear, Plaintiff's allegation would seem to fit under the third exception—denial of meaningful access. This exception applies when "one party has the sole power to invoke the higher levels of the review procedure and has not allowed another party access [and] . . . the other party [has] made attempts to have the higher levels of review initiated." *Id*. at 415 (citation omitted). Additionally, the party seeking the exception must "present facts and evidence showing he or she was prevented from exercising administrative remedies." *Murren v. Am. Nat. Can Co.*, No. 99-3136, 2000 WL 116067, at *4 (E.D. Pa. Jan. 27, 2000); *see also In re Zahl v. Local 641 Teamsters Welfare Fund*, No. 09-1100, 2010 WL 1931235, at *3 (D.N.J. May 13, 2010) ("A plaintiff must demonstrate the existence of a recognized exception to the exhaustion requirement by a 'clear and positive' showing.") (quoting *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2002)).

Here, Plaintiff fails to make a "clear and positive" showing through his threadbare allegations, as he does not present facts or evidence showing the provisions of the benefit plan upon which he relies on, nor which administrative procedures he allegedly attempted to access and to which he was denied meaningful access. In fact, Plaintiff does not allege any facts regarding

13

the details of his pension benefit plan whatsoever.[10] Plaintiff's conclusory statements are nothing more than a formulaic recitation of the elements of his ERISA claim. *See Phillips*, 515 F.3d at 231 ("[A] plaintiff's [Rule] 8 obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

Interestingly, in opposition, Plaintiff argues that PSE&G "has failed to offer proof of the existence of any applicable administrative remedies under [PSE&G's] benefit plan," and that PSE&G "failed to offer proof that Plaintiff had notice of the existence of such procedures." (Pl. Opp. Br. at 10). Plaintiff also argues that PSE&G did not notify Plaintiff of "the available options or procedures for handling his accounts post-termination" and that PSE&G "has not offered any proof that Plaintiff was otherwise aware of the proper administrative remedies or procedures to follow." (*Id.*).

Notwithstanding the fact that this Court previously discounted these same arguments in its September 27, 2013 Opinion,[11] the Court still remains unaware how Plaintiff attempted to gain access to the pension plan's administrative procedures, and yet, simultaneously had no notice or was aware of the existence of those same procedures. The Court, therefore, dismisses Plaintiff's ERISA claim, *without prejudice*, so that Plaintiff may more clearly state the facts of his claim as they relate to the pension plan.

---

[10] The Collective Bargaining Agreement does note that the "Pension Plan of [PSE&G] . . . shall continue for the duration of this Agreement." (Collective Bargaining Agreement at 44). Plaintiff, however, does not mention any detail regarding this plan in his Amended Complaint and does not attach a copy of this plan to any document submitted to the Court.

[11] Plaintiff made these exact arguments in his opposition brief to Defendants' motion to dismiss the initial complaint and the Court instructed Plaintiff that he could not amend his pleadings in a brief opposing a motion to dismiss and that "it is Plaintiff who must allege exhaustion of administration remedies." (D.E. No. 10, at 15).

### C.  Count Four:  Unreasonable Intrusion upon Seclusion

The Court previously dismissed, *without prejudice*, Plaintiff's intrusion upon seclusion claim because its "conclusory statement of surveillance is nothing more than a formulaic recitation of the elements of this tort."  (D.E. No. 10, at 17).  The Court stated that the complaint lacked factual allegations sufficient to show liable conduct.  Plaintiff failed to plead the type of surveillance, which "is critical in determining the validity of an intrusion upon seclusion clam." (*Id.*).  In the Amended Complaint, Plaintiff alleges that Defendants "conduct[ed] surveillance on Plaintiff without consent or knowledge."  (Am. Compl. ¶ 41).  Plaintiff further alleges that "Defendants knowingly utilized third parties, including but not limited to Victoria Young," and that "Defendants utilized surveillance of Plaintiff's tele and/or wireless communications" to conduct said surveillance.  (*Id.*).

In response, Defendants argue that the claim is time-barred under the two-year statute of limitations, since the alleged investigation giving rise to the claim occurred prior to Plaintiff's discharge on July 19, 2009, and Plaintiff brought the instant suit on December 31, 2012, more than three years later. (Def. Br. at 20-21).  Defendants further argue that Plaintiff became aware of the investigation "at the May 2010 and June 2010 arbitration hearings or, at the very latest," on July 15, 2010 when the arbitrator rendered her opinion and award.  (*Id.* at 21).

Plaintiff's intrusion upon seclusion claim is governed by New Jersey's statute of limitations for personal injury actions, as set forth in N.J.S.A. § 2A:14–2.  *See Rambauskas v. Cantor*, 138 N.J. 173, 182 (1994) (holding that two-year limitations period applies to cause of action for intrusion on seclusion based on nature of tortious conduct such as stalking, surveillance, harassment, and threats of violence).  An action for an injury to the person caused by a wrongful act must be commenced within two years of accrual of the cause of action. N.J.S.A. § 2A:14–2(a).

15

Accrual of a cause of action generally occurs "from the date of the negligent act or omission." *Fahey v. Hollywood Bicycle Ctr., Inc.*, 386 F. App'x 289, 290 (3d Cir. 2010) (internal quotation omitted).

The basis for Plaintiff's tort claim seems to be Defendants' investigation of Young's home and Plaintiff's phone records in April of 2009. (Arb. Op. at 7-8, 10-11); (*see also* Am. Compl. ¶ 42) ("Plaintiff has suffered severe emotional distress as a result of *the investigation* and his *subsequent* wrongful discharge.") (emphasis added). The arbitration hearings of May 2010 and June 2010, as well as Arbitrator Gandel's opinion on July 15, 2010, discussed the alleged investigation giving rise to the claim. (*See* Arb. Op. at 7-8, 10-11). Plaintiff filed the instant action on December 31, 2012, more than three years after the investigation occurred and Plaintiff was discharged, and two years and five months after the arbitrator rendered her opinion. Thus, Plaintiff's intrusion upon seclusion claim falls outside the two-year statute of limitations period.

However, Plaintiff attempts to supplement the Amended Complaint by claiming that "Plaintiff became aware of the actionable tort when the information supporting the arbitration cause of action was made available to him in March 2011," thereby delaying the accrual of the cause of action under the discovery doctrine. (Pl. Opp. Br. at 13-14). However, Plaintiff does not mention the above allegation anywhere in his Amended Complaint. The Third Circuit has ruled that it is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Penn. ex. Rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted).

Additionally, even if this Court were to consider Plaintiff's facts offered in his opposition brief, Plaintiff's allegation is still unclear. Plaintiff states that he did not become aware of the

information "supporting the *arbitration* cause of action" until March 2011, but Arbitrator Gandel issued her opinion and award on July 15, 2010, eight months earlier. (Arb. Op. at 1).

Therefore, Plaintiff's tort claim is dismissed, *without prejudice*, allowing Plaintiff the opportunity to plead the applicability of the tort and the accompanying timeline that will allow the claim to survive, or alternatively, to be barred.

### IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss Counts One, Two, and Three, as it relates to the NJWPL claim, is granted *with prejudice.* Defendants' motion to dismiss Count Three, as it relates to the ERISA claim, and Count Four, is granted *without prejudice.* Plaintiff shall have thirty days to file an amended complaint to cure the deficiencies noted above.

s/*Esther Salas*
**Esther Salas, U.S.D.J.**